Good morning, Your Honor, may it please the Court, my name is Ellis Baggs, appearing on behalf of the petitioner, Mr. Julio David Castillo. I just wanted to note briefly the context. These facts are not specifically relevant, but it's important to remember that this case involves a lawful permanent resident who entered the United States in the mid-1980s as a minor. The entire family entered as lawful residents. His father naturalized shortly thereafter, while Mr. Castillo was still a minor under the laws as it is written today, he would therefore be a citizen automatically. His mother naturalized shortly thereafter, unfortunately that was after he reached the age of majority. So he did not automatically naturalize at that point. In the mid-1990s, Mr. Castillo pled guilty to the Virginia statute that is at issue today 18.2-102. He served 38 days actual jail time for that. Twenty-two years later, Department of Homeland Security detained Mr. Castillo and told him that because he pled guilty in 1995, he was a deportable lawful permanent resident, and he has now been in custody for two and a half years while his case has proceeded. As Your Honor is aware, the categorical analysis is the method by which we're going to decide whether Mr. Castillo actually committed a theft offense. Two recent Supreme Court cases have reemphasized how the categorical analysis is supposed to proceed. The case of Moncrief specifically notes that it's actually not a very complex process at all. We'll look at the generic definition of theft under the Immigration and Naturalization Act, and then we will compare the elements of 18.2-102 and determine whether those elements match up to the generic definition. As we look at the elements of 18.2-102, we keep in mind that we're going to look at the least act which can result in conviction. Moncrief did note that there needs to be a realistic probability that these act that we are looking at, the least act, would be prosecuted. But I would also note that, in my mind, I think of a standard that is sort of a reasonable commonwealth's attorney approach. A commonwealth's attorney looks at the statute, and their job is to try to fit whatever they can into the statute. So I think there are many different situations that we can look at to determine what is the least act that's reasonably possible to be prosecuted. Turning to the theft definition first, we're going to start with Chevron step one, which is to determine whether Congress spoke directly to, unambiguously to, the question, the element of the definition that's before us right now. And we're going to be following this court's decision in Solomon. Solomon did the same analysis for a different proposed element of the theft defense and found that Chevron step one was sufficient. Congress did speak unambiguously as to that element. Similarly here, there are clearly aspects of the theft definition that are ambiguous. But as Solomon said, there are outer boundaries. There are specific items that are unambiguously not part of the theft definition. To determine Congress's intent, we're going to look, first of all, at the list of aggravated felonies. It's very clear that these are highly serious crimes, murder, rape, bribery, extortion, running a prostitution business. I won't list them all. They're all – I listed them in the brief. The closest additional aggravated felony is the fraud aggravated felony. Congress set a limit of $10,000 before this will be considered an aggravated felony. Clearly Congress's intent was that they are targeting the most serious crimes. I'd also point out that these are aggravated felonies. Congress used the word aggravated. I did check Black's definition of aggravated, made worse or more serious by circumstances such as violence, presence of a deadly weapon. Not every felony is an aggravated felony, that's clear. The Ninth Circuit in Corona-Sanchez also looked at this congressional intent. They pointed to similar factors. These are aggravated felonies. They did point to some legislative history. House report from the 1995 amendments declaring the purpose of the amendments was to target serious crimes. They pointed to… And one of those serious crimes is a theft defense for which the punishment is a sentence of at least one year imprisonment. So I get your point that there are a series of, I guess, gradations of seriousness in this statute, but this theft defense is one of them. Exactly. And it has to be a theft defense which they thought was a serious crime. They think that theft is serious and so therefore there's a clear delineation between other types of deprivation of possession of property, for example, that are not serious and therefore not theft defenses. Well, Mr. Bags, don't you really have to, in order to prevail, don't you have to try to make the argument to us that the Virginia Unauthorized Use Statute is not a theft defense as defined by the INA? Because you're not going to prevail by saying that the INA's definition is unreasonable, are you? No, no. Certainly not. The INA's definition is… Right. So why don't you go through… It seems to me it might be most productive to tell us why the Virginia UUV statute does not match up to the INA's definition of a theft defense. Yep. Well, and by INA, we're talking about the statutory definition and so just to clarify, that definition includes under Chevron step one an unambiguous elimination of anything that's not serious. As interpreted by the BIA. Well, that's my next point is that, you know, I think it's unambiguous. Looking at step two, if you need to look at the BIA's interpretations, BIA hasn't told us very much at all, unfortunately. Yes, there is Chevron deference to the VZS case, the en banc decision in which BIA said that it doesn't have to be an intent to permanently deprive. Beyond that… They're saying that it's an intent to deprive the owner of the rights and benefits of ownership even if it's such deprivation is less than total or permanent, is that correct? Exactly. That's exactly right. And if it's less than total or permanent, that means total or permanent would be 100%. They do not speak to whether 99% is what crosses the line into theft or whether 10% is what crosses the line into theft. Okay. Now, the BIA and VZS did say that not all takings of property will meet the theft defense standard because some takings entail a de minimis deprivation of ownership interest. Exactly. Now, why, in what respect can you rely on this language? It clearly is dicta. It is dicta. So tell me how that, how we can consider that in terms of the statutory analysis we have to do here. Exactly. If as a matter of law, you read a statute and someone can be convicted for having committed a de minimis deprivation of property and my understanding is de minimis could be a temporal de minimis or it could be an ownership rights de minimis. So for example, a de minimis temporal taking would be 10 minutes a day. We don't know exactly what the line is, but it's something that does not specifically cause the owner a huge amount of harm because they've been dispossessed of this property for a very short time. Give us an example then if you could. What would be a violation of the UUV statute in Virginia that would not constitute a theft defense under the BIA's definition interpreting the INA? I feel like one of my favorite examples is golf cart joyriding. There's no breaking and entering. A golf cart is sitting outside. You get on the golf cart, drive it around. You never leave the golf course. So there's no taking because you haven't removed the item from the owner's property. Have you deprived the owner of possession temporarily by driving it? You may or you may not. And again, we're looking at... Are you positing then that the golf course is closed and the owner wouldn't want to use it or what's your theory? We can look at both of those hypotheticals. Exactly. So one is that the golf course is closed. There's never any specific time that the owner or somebody that the owner has designated to drive a golf cart has specifically come out and said, I need that golf cart right now. Get off of it. And you've declined. Does possession necessarily intend deprivation of actual possession? Or is this more of a concept that I have a right to my vehicle and you don't have a right to use it? Exactly. 102 is the language about needing to improve intent temporarily to deprive possession is not the affirmative, oh, I'm being told to give it back and I'm not giving it back. The mere fact of taking it is enough, even if they don't want it at that particular time. And that's true. That's clear from the Virginia cases. Mr. Back... I'm sorry. No, please finish. No. Thank you. Mr. Back, my understanding of the categorical approach is admittedly tenuous, but I understand that you look for purposes of comparison, and I think you indicated this, at the least act reasonably likely to be prosecuted. That's correct. Doesn't that narrow our frame of reference? Because some of the examples that you posit, while indeed colorful, would strike me as highly unlikely to be prosecuted. Well, and that's why I like the golf cart joyriding example so much. Clearly, most golf courses are going to be, they have a reputation to protect, and they're going to be highly protective. In this example, there's no damage to the golf cart, but they need to make an example of somebody who's done this, so they are going to prosecute. And this is the only statute available for them to prosecute. That's a critical point in Virginia. All of these joyriding cases, there's no separate statute, and this clearly distinguishes it from the California situation, which at the time VZS was decided, there was a separate lower statute that said, okay, if you're just out joyriding and you're not doing anything else, we're going to charge you with a lower crime. And VZS obviously didn't reach that statute, but it's clear from their holding that they were keeping in mind that, okay, California has bifurcated the statute into the more serious theft. Yes, the taking was temporary, but the person was clearly intending to deprive some of the The mill joyriding is another example, which I think easily... What is run of the mill joyriding? Run of the mill joyriding. I would call that there's a car sitting there, maybe it's your friend's car, maybe it's your neighbor's car, and you take it for 45 minutes. You return it, maybe you even stop and fill up the gas because you're a nice guy. But so you've taken no value whatsoever from this car. Except the owner's right to use it if he or she wanted to while it was gone, not knowing when it would be back. Exactly. And so that's why this is not a serious crime and under, well, Congress is... I'm not sure about that. The owner might think differently. I mean, frankly, I mean, the owner's opinion isn't exactly relevant. Obviously, they are upset and that's why they would want this prosecuted and why there is a need to do this. But I mean, there are many crimes that the victim is upset about that aren't serious. I don't think we can just look at the owner's opinion. But again, going back to the golf cart hypothetical... Does it deprive them of the rights and benefits of ownership, even if that deprivation is less than total or permanent? The answer is, and again, just because it's temporary and less than permanent doesn't mean that we don't look to the temporal piece. I think you understand that. And so it is, for Virginia purposes, it does meet this language of there was intent temporarily to deprive possession. So the answer is yes, there is intent to deprive possession, but it's not theft. And it's clear that these arguments that all you have to do is take possession of a piece of property for whatever short amount of time. We never look at the time. Of course, we're going to look at the time. And BIA has no... Persuade no deference to the idea that the time is irrelevant. I want to briefly mention the Jagernoff case from the 11th Circuit in which specifically it's a very similar situation in which we find that, okay, they found that appropriation is not theft. And yet they looked up the definition of appropriation, which said a taking of possession. So the 11th Circuit, and that was affirmed last year, 2013, in the 11th Circuit by Ramos. So there's clearly precedent for a finding that taking a possession is not a taking of ownership sufficient for theft. Thank you very much, Mr. Bags. And you have some time reserved for rebuttal. Ms. Thomas-Doris? Good morning. May it please the Court. My name is Nicole Thomas-Doris, and I represent the United States Attorney General. Mr. Castillo's conviction for unauthorized use of a vehicle is categorically a theft offense as reasonably defined by the Board, and thus an aggravated felony rendering him removable from the United States. In the categorical approach, the Court looks to the generic definition of theft, in this case, the Board's definition that has been deemed reasonable by the majority of courts, and compares it to the statute of conviction, the Virginia's unauthorized use statute. And here, the elements clearly align. They both, the Board's definition, taking or exercise of control. Virginia, taking, drive, or use. They both have the element that it be without consent. And more importantly, most importantly to this case, with regard to the intent, the Board's definition requires a specific criminal intent to deprive the owner of the rights and benefits of ownership. Jerry, let me give you an example, just to get started here. Does the owner, what if the owner has given possession to, let's just say, and this is a case I saw in real life, in the circuit court of Fairfax County, where the owner gave the possession to the daughter to drive the vehicle, and said, you can use the vehicle for the next day. And, but I don't want your boyfriend driving it. Okay. Of course, the boyfriend and the daughter decided that the boyfriend would drive half the time. Okay. That's unauthorized use of a motor vehicle. I mean, yeah, of a motor vehicle. The owner has relinquished possession, so possession's not an issue. He's given possession to the daughter. Right. And they return it on time. Where is the criminal intent for unauthorized use, excuse me, the criminal intent for a theft offense under the BIA's interpretation of theft offense? The board in Garcia Madruga expanded the specific intent requirement there to include exercise of control after the Supreme Court had acknowledged that exercise of control formulation in the intent, and the board there in a footnote stated that that formulation envisioned indirect takings, or where the original, or the original take, not taking, but was a consensual giving of the property later to become somehow outside of the scope of protection. You're saying the boyfriend has committed a theft offense under the BIA's definition by driving the car from McDonald's to Wendy's during the course of this day-long period of time. Well, it needs, it has to be tied to that criminal specific intent to deprive the owner of the benefits and records. Okay. Well, where's the intent in my example? It's the intent to... What was the boyfriend doing that was criminally, that was criminally a theft offense? He's exercising control over the property without the consent of the owner. Yeah. He drove it for a mile, but the owner had already given it to his daughter. The owner didn't expect it back for another 12 hours. So, what was he doing that was a theft offense there? Well, again, I would argue that he is operating that vehicle with the criminal intent to deprive the owner of the rights and benefits. Okay. Those might be more than just possession. Okay. Let's take another example and see how that one plays out in your analysis. You know, the Ninth Circuit case of Nevarez, interpreting the Arizona statute, are you familiar with Nevarez? No, Your Honor. I'm sorry. Okay. Well, in Nevarez, the court gave an example. This was Judge Noonan in 2003, gave an example of a situation where there would not be a criminal intent, a sufficient criminal intent. And he posited the situation of the owner, excuse me, the renter of a car. Let's say I rent a car from Avis, and I rent it at National Airport. And part of my contract is to return it to Dulles Airport, which is about 15 miles away. Okay. I have to return it at noon. Okay. I return it to the wrong airport because I can't be bothered. I've got a plane to catch. I don't want to deal with this. Okay. I have engaged in a non-authorized use of the vehicle because I have failed to return it to where I was contractually obligated to return it. But where is the criminal intent of a theft offense under the BIA's definition? I've used the vehicle in a non-authorized fashion, no question. But where's the theft? Where are you taking control of the vehicle in violation of the law under your analysis? Well, Your Honor, I'm sorry that I don't know that case, Your Honor. But it was found to be an aggravated felony theft offense? No. I'm just saying this is an example. Okay. This is an example that the judge gave in analyzing an Arizona statute that is divisible. So it's a different case. Okay. But I thought the airport example was particularly compelling in terms of our case. And I'm just wondering how your analysis holds up under the airport example. Okay. So with any offense under the board's definition, it does have to be tied to that intent to deprive the owner of the rights and benefits of ownership. And there, in that case, of course, possession is rightfully in that person. That person has not deprived the owner of possession. Right. Ms. Thomas-Story, does the fact that the BIA en banc panel recognize that not all takings of property will meet the standard because some takings entail a de minimis deprivation of ownership interests provide any assistance in your analysis? Well, yes, but in this respect, the board's language is dicta. But the board hasn't been presented with an actual case where there is a de minimis deprivation or glorified borrowing. And the petitioner, importantly here, hasn't shown a realistic probability of the Virginia statute being applied in that way. Well, why wouldn't the rental car example be one? I mean, Avis cannot have these people returning the cars to the airport at the wrong place all the time. They just can't. Right. It would cause chaos in their business structure and in their ability to plan. So they've got to prosecute. And the word will get out. And they will say, we will prosecute you for unauthorized use of the vehicle because our business model is predicated on you living up to your contract. Now, why is that so far-fetched? It seems to me it's real-life likely. Right. And if the petitioner were able to point to an actual prosecution of the Virginia statute to those facts, then that would be different. What you want is a reported case, it seems to me. And it seems to me that that's the flaw in your argument. I think the law doesn't require a reported case that contradicts your analysis. It seems to me that the law requires a plausible scenario under which someone could violate the law, in this case the Virginia UUV statute, and still not commit a theft offense. The law doesn't require – tell me anywhere that says that the law requires a reported case, a real-life case that happened, as opposed to something that plausibly could happen. The Supreme Court in Duenas-Alvarez states that in order to show that a generic – that a state statute would be applied to conduct outside of a generic theft offense definition, it needs to be shown a realistic probability that the statute would be applied that way by a petitioner pointing to their own case or another case. The Supreme Court didn't say that. It just said there had to be – you have to show that this is really something that could happen in real life. They didn't say you have to point to a case. Has there really been a deprivation of ownership in the car rental example if the car is in fact returned to the owner writ large? The car is back in Avis' control. It just doesn't happen to be in the precise location that they would like. That's a breach of contract, perhaps. Right. But I don't see how that's a criminal violation. But, Your Honor, I think in that particular instance, I mean, perhaps that would fall under the terms, you know, glorified borrowing or – That would be a violation of Virginia statute? I'm just not sure. You know, it is the government's position that the petitioner has to show a real case. Are you listening to the question? Yes. I don't think it is a violation of the statute because I don't think there's a specific – Why not? – criminal intent there to temporarily deprive the owner – I'm sorry. A specific criminal intent to temporarily deprive the owner of possession there. Could I ask, in interpreting the Virginia statute, has the Virginia Supreme Court provided any guidance on how it would construe situations in which there's been a temporary deprivation of possession or rights of ownership? Well, there is a case, Your Honor, that is not cited in our brief, Your Honor, but there is slightly an old case in the Virginia Supreme Court that simply states that the difference between larceny and unauthorized use of a vehicle is this intent where one is permanent deprivation and the other is temporary deprivation. And how is that helpful? I was asking if the Virginia Supreme Court has interpreted 18.2 in a way that would provide guidance to us as to its parameters. As to the parameters of what is temporary? I mean, the answer is no, I don't know of one that would help you. You're not aware of them? Yes. I do know that there are multiple state cases, state court cases cited by petitioner where the takings are temporary. Over street, well, in that case, I mean, the defendant was found with the car, but these are all temporary takings where, for example, in one of the cases cited by the petitioner, it's a tow truck driver who's told by his boss to take the tow truck home and he, instead of taking it home and parking it under the instructions of his boss, takes it out for a day and a half using it and towing another truck. Another case is where someone is told you can have the car at 11 p.m. at night and you need to come back after you go to your boss's house and they find the person using the car the next day after reporting to someone at 5 p.m. So these are, they're all cases where there is this temporary, intent to temporarily deprive the owner of the possession of the car. And in response to, I think, Judge Keenan's questions, you don't believe, you can't conceive of a situation in which the state would apply its statute to conduct that falls outside the generic definition of the crime, such as the daughter who takes the car and is told to be back at midnight and comes back at 1 a.m., for instance. Right, because I would say that that has the necessary specific intent to deprive the owner of the rights and benefits. It does. So the daughter's guilty of theft? A theft offense that's broadly construed by the federal courts and now by the board. It's not theft as in larceny tied to common law definitions. But this broader idea of a theft offense, yes. And I would state again that the petitioner has to show that, you know, there is a realistic probability here that the statute would be applied to conduct that falls outside of it. And the Supreme Court's been very clear about that. Right. And I do, and it is the government's position that he has to point to a case where it was actually prosecuted, either his own case or another. What is your authority for that proposition? If I can, I know I have 10 more seconds, but if I could just look. Is there authority for that proposition? Yes, I think it's Gonzalez v. Duenas-Alvarez, the 2007 Supreme Court case. And the language about realistic probability comes from Duenas-Alvarez. Right. But I don't recall it saying anything about a presidential opinion, so holding. Did I miss that? Not presidential. Or holding. An actual prosecution. Or an actual prosecution. Well, then why would they have used the words realistic probability if they were requiring an actual prosecution? Isn't your argument internally inconsistent? Your Honor, I'm sorry. I was looking for the language in Gonzalez v. Duenas-Alvarez. I can't find it at this moment, but I would say that the petitioner must, I'll just say this. The petitioner has not shown a realistic probability here because the elements line up so neatly that you have each element of the board's reasonable definition in the statute, in Virginia statute. So I would say that there's a categorical match here. He has not shown the realistic probability, and therefore he's committed an aggravated felony and is removable from the United States, Your Honor. Thank you. Thank you. Mr. Baggs, you have a few moments for rebuttal. Thank you, Your Honor. It's clear the case is coming down to the question of realistic probability. And to answer your question, there is no authority further refining the definition of realistic probability. The Supreme Court in Moncrief repeated the language realistic probability but, again, declined to offer any further guidance as to what that means. I would agree with Judge Keenan that a realistic probability is, you know, a very broad possibility. We can look at any sort of situation and put ourselves, as I said at the very beginning of the argument, in sort of a position of a reasonable commonwealth's attorney to try to decide. Yeah, you're certainly right. And it is very broad, limited somewhat by the next phrase that the state would apply its statute to. I'm agreeing with you that it is. I'm simply saying there is some – there's a bit of a caveat. Yeah. And, again, I am enthusiastic about colorful examples, and you know that. And I'm not going to try to run the craziest ideas by you. And I thank you for that. Excuse me. But I would point out that we do have some additional evidence as to what kinds of things are being prosecuted. First of all, I mean, I would point out Judge Keenan's language in Tucker v. Commonwealth that we are bound by the plain and unambiguous meaning. So when we look at the word use, use is plain and unambiguous. It's a very broad term. Overstreet, they didn't actually find a specific intent to deprive of possession. As I read that case, again, this sort of, okay, we're going to argue that the mindset was, oh, I'm just taking it because I want to drive the car around, or do I want to take it because I want to make sure the owner doesn't have it. There's no sort of – they're not getting into the weeds like that. Well, isn't the issue that it's a general intent statute and not a specific intent statute? Isn't that your answer? Exactly. Thank you. And further, Overstreet cites to the Ohio statute as functionally equivalent, and the Ohio statute does not have this language of intent, specific intent. It's general intent. It doesn't have a language about any intent. I would say that I, just to proffer, talk to every friend that I have that's related to the Commonwealth's Attorney's Office. I talked to my friend who's Chief Magistrate for Henrico County, and I tried to get access to whatever records I could at the circuit level and at the general district level to find more cases. But I think this actually speaks to going back to that these are minor offenses, not the serious offenses that Congress intended, that these cases are not coming up because they are just not big cases that require these sorts of analyses. Thank you. Thank you very much. We will ask the clerk to adjourn court for the day, and we will come down and greet counsel.
judges: Allyson K. Duncan, Barbara Milano Keenan, Albert Diaz